So our first case today is 524-0206, People v. Zachary Reed. I've got Ms. Seary on behalf of the appellate and then Ms. Ray here on behalf of the state. You ready to proceed? And we just ask two things. Obviously, state your name for the record when you begin. We were having some serious feedback problems yesterday. So, and I'm just going to be honest, it was quite annoying and somewhat difficult. So I may, if we continue to have those problems today, I may stop for a moment and see if we can move microphones around to take care of that feedback problem. Believe me, I will give everybody their sufficient time if we do have to take a little break to do that. But like I said, it was somewhat distracting. I think it may be fixed. Do I need to adjust this? We'll see how it is and then we'll adjust it if we need to. I'll try not to yell. It's all good. Go right ahead. Good morning, Your Honors. May it please the Court. My name is Miriam Seary on behalf of Mr. Reed. Your Honors, this is a case where my client is serving a life, de facto life sentence for video material containing child pornography. And we've raised five issues. I'd like to address the first three issues, the two trial errors and the unit of prosecution. But of course, if you have questions as to the other issues, I'll be happy to answer any questions. So the State concedes the two trial errors that occurred here. First, that the State was allowed to play a 40-minute video at the end of its case that was admittedly hearsay and inadmissible. And the State also concedes essentially the error that the detective, Mr. Johnson, was allowed to opine that my client, Mr. Reed, was guilty in this case. So the sole argument is really over whether this constituted plain error and whether this was harmless. And here's the harm. The State played a 40-minute long video that was really solely there to implicate my client in yet another offense. And it made him look like somebody who would commit the kind of offense at issue here. And it also, of course, endeared him, endeared K.L., the victim here, to the jury. And the State strategically placed this video at the very end where there was no more cross-examination. So that's as to the video. As to the testimony of the detective, I want to emphasize the exact words that the detective here said to essentially opine that he, in his professional capacity, could tell that Mr. Reed was guilty. He said, his reaction as he was confronting him did not seem appropriate for an innocent person accused of this type of crime. In essence, he told the jury that Mr. Reed's behavior was incompatible with innocence. And this was based on his, quote, unquote, experiment that he ran and that turned him into somewhat of a human lie detector. It's not contested here that this was opinion testimony. And whether you look at it as expert opinion testimony or as lay opinion testimony, this was not admissible. If he was an expert, he was not qualified as one. He was not offered as an expert. And if it was opinion testimony, he went way past what we allow lay opinions to testify to, namely, the ultimate issue of fact here, whether Mr. Reed was guilty or not. So this is also not harmless when you allow somebody with the force of a detective to tell the jury that in his professional opinion, this man is guilty. And then the state's final argument is that this, you cannot review this because it's not plain error, because this was not a closely balanced case. But of course, this was a closely balanced case because of the suppression of that videotape, because the charger where the video was found was in a bathroom that was accessible to everybody. There was no physical evidence that was attached to the charger, meaning DNA, fingerprints. My client was not on that video in any way. And when he supposedly had the opportunity to take that charger, he did not. And then finally, the testimonial connection to that charger came all through the mother of K.L., N.L., who had her own problems. This was not a particularly strong witness. She herself had been in trouble with the law. She had her children taken away. She clearly had her own agenda. She was very obstructionist, as she was testifying. So she clearly had her own agenda as she testified. So this was, you can review this as plain error. So as to those two issues, we would ask that you remand this for a new trial. Can I ask you, I know that one of the state's arguments is that if it would have been at least brought up to the attention of the trial court by objection or whatnot, then the state would have had the opportunity to qualify the detective as an expert. So yeah, I mean, the state makes this harmless error argument, but it's not really clear what the expertise would have been. Because this is not the type of expertise where we're like, oh, the cops always, excuse me, the police officers always know how to, you know, identify drugs or something like this. Here we have a police officer who claims that he can basically serve as a lie detector. He sets up this experiment. He confronts my client with this kind of false, I think he gave him like some false facts, and then he gave him this, and he's like, I can tell you that how he reacted is that is clearly a lie. I'm not really sure what human science that is. And if the state claims this is science, then he needs to offer him up as an expert and allow cross-examination on that type of expertise. So unless you have other questions about these two issues, I would jump on to the unit of prosecution argument. Yannis, there's only, if there's a conviction here, there should be only one. The unit of prosecution is the question of what acts the legislature has criminalized when it passed a criminal statute and it limits the number of convictions. So it's not in dispute here that the act that happened was plugging a charger with a video camera into an outlet that then continually took video material that was then saved onto the card on there. Was it motion activated though? It was motion activated, but of course the motions came from the people that came in and out of the bathroom. But the act by whoever did this was the plugging in into the camera, into the outlet. Everything else was automated. And your honors have already held in Covalt that the unit of prosecution for the child pornography statute for the filming of child pornography is ambiguous. We don't really know what the legislature intended. And the state's main argument here is really that when the legislature amended the statute for possession of child pornography, it also meant to amend as to the filming of child pornography. But you have already rejected that argument in Covalt. Covalt makes clear that possession is now, and I know I miscited this in my brief, but Section A-5 amended the statute as to possession but not as to filming. So we don't have to show here that the filming, or that we know exactly what the legislature meant when it set the unit of prosecution. What we have to show is that it's ambiguous. And if it's ambiguous, then, was that my time? No, you've still got some time. Sorry. So we only have to show that the statute itself is ambiguous. We do not have to show that it sets the unit of prosecution because if it's ambiguous, then the rule of lenity applies. And the state's argument, just as my final point is, that this leads to results that may not have been intended by the statute, but that is for the legislature to fix. That is not for the courts to fix. So we are asking as to that, that you would find that this is a single unit of prosecution case so that there can only be one conviction in this case and one sentence for that. And so taking those two together, we would ask that you remand and ask for, we ask for a new trial, ask that you remand and that you find that only a single unit of prosecution is proper here. And the trial court, I think during the sentencing hearing, did make, if I'm looking at my notes correctly, did make the comment that this was all part of the same course of conduct. And if I'm, again, I've read so many cases, I have two days in court, so 18 cases that run together with this. But I believe, if I remember correctly, the trial court sentenced him to two acts. There was a sentence of 30 and 30 on two counts, is that what? That's correct, but it's on the first two counts, and those are both charged as the material that came directly off of that plug. And he said, you know, whatever, the lewd exhibition count, that's count eight. That, no, I think count seven, right. It's the last count. That, he said that was all one part of conduct. And he made that finding and the state did not object. I see my time is up. I do have a question, though. How do you address, or how do you, I'll just leave it that way. How do you address the contention that the filming was not on a continuous basis, but was interrupted sections of filming? And that the person, whoever put that in there, had selected a camera that operates on a start and stop basis. Is that any concern? Is that a concern for this court to look at? The way that I would answer that is that the statute talks about filming. What is produced are files. And while those files, while that camera produces separate files, it does not produce separate acts. And the act, the unit of prosecution is the filming. And there's only one act of filming here. There are not several acts of filming. It does produce separate files. I acknowledge that. But the statute does not talk about files. And interestingly, in the possession, when the legislature fixed the possession part of the statute, it made it very clear that separate files are available for separate prosecutions. But that fix was not done here for the filming. So it's very clear that the legislature left this act of filming as one. And there's only one act of filming. Wouldn't that lead to the possibility of a camera operating on batteries that could record essentially endlessly? And that would, in your argument, would only be one act? That may be the case. And I think the unit of prosecution compels the courts to find that that is something for the legislature to fix. If the statute really does allow that, I think the statute is ambiguous as to whether it allows that or not. And if it's ambiguous, then in this case it goes for my client. Thank you. Thank you, Your Honor. Mr. Powell, any questions? Well, it just seems like, piggybacking on what Justice Hacker was asking, if different girls say there's a slumber party and five different girls go in the bathroom at different times, you've got five different victims, you're just saying it's still just one charge, even though the camera starts and stops, the first girl comes in, the second girl comes in. And in this case, I understand there were not five victims, but it seems like every time the camera starts and stops, it does seem to be clear that there's different offenses occurring, that it creates different files, it creates different scenarios, it creates a whole lot of things, it seems to me, like separate crimes. I think the court, this court in Covalt and the court, the second district court in McSwain, was faced with the same kind of problem, and that is something for the legislature to fix. If technology allows new types of events, and it's unclear from the statute how those events map onto the statute, then under the unit of prosecution, without direction from the legislature, that is what we are compelled to do, and this is what this court held in Covalt. This court in Covalt was also faced with that problem, where there were two victims, and there was sort of like, well, there ought to be two convictions here, but the statute is unclear as to how many convictions are allowed. Thank you. Thank you, Your Honor. Thank you, Your Honor. You have your rebuttal time. Okay, thank you. Thank you. Thank you. May it please the court, counsel, I'm Becky Ray, representing the people. There are several issues in this case. As the court realizes, I am going to address first the unit of prosecution, which seems to be the hot-button topic here. Unless there are specific questions about the other issues, I will just stand on the state's brief on those. The USB adapter motion sensor camera that this defendant selected to use was a proxy or substitute for him manually, physically pushing the button to record each time someone entered the bathroom. He used that camera to record the victim in the shower in private moments, doing things that were intended to be personal and private and not for the defendant's voyeuristic eyes. He had been caught red-handed, more or less, trying to record the victim previously in the downstairs bathroom with his cell phone, which he set up after she announced that she was going to take a shower. He went into the bathroom and set up his phone to charge. She recognized that there might be a problem that the phone was recording, and it was indeed recording. The family together decided that was an accident. But I think it's very clear that the defendant chose this motion sensor camera so that those types of accidents could be avoided and he could capture the film that he wanted of this victim. He essentially installed a substitute for his act of needing to press record on his phone, and it allowed him to record everyone who entered the bathroom, with the exception of himself, because he knew what it was doing, even though the rest of the family did not. He knew that it would capture him on camera if he activated it, and so clearly he knew he could avoid that and did so. While the defendant argues he only committed one act, which was installing the camera in the bathroom initially, he fails to recognize that each recording started by the motion, again, is a substitute for his finger pushing the record button. The multiple video recordings occurred because of his choice of that technology, and they constitute multiple acts here, not a single act. The videos were separated by time, sometimes hours, other times days, but in totality the videos were separated by other persons, members of the victim's family, entering the room and activating that motion recorded camera. How do you distinguish Cobalt? And I apologize, I think I was on the panel, in fact I think I was the author of Cobalt. My memory is, and it's kind of vague, we have so many cases as just Louie mentioned, but it seems like we discussed unit of prosecution in Cobalt in terms of joinder or speedy trial issues. I can't remember exactly what the issue was when we discussed unit of prosecution, so how do you distinguish Cobalt? I did have a written response, and I'll refer to that here. In Cobalt, the court found that the acts charged against the defendant in counts 4, 5, and 6 were all based upon a single video recording of two minors. They were made by the defendant in that case, and the court said that a single filming can only sustain a single conviction, so two of those three convictions had to be vacated. But in the instant case, however, the charges were based on multiple videos. Again, intervening events, time, lapse of time of minutes or days, different family members, everyone in the household had been in and out of that bathroom, and the videos of KL, the victim, were often separated by those intervening acts of other people entering into the bathroom. The hidden camera here contained a micro SD card that was motion activated and would turn on and begin recording when it detected movement. While Cobalt involved a single continuous filming of two minor victims, the recordings in this case would begin when motion was detected, and then they would stop after a period of time if no motion was detected, and then they would start up again when motion was detected again. And those recordings, according to the testimony, contained dates and times of when they were recorded, so you could see that there was a separation of time in between those videos, and clearly, if you viewed them, you could see that KL might be in one, and then she might not be in the next one, and it might be a day or two before she would, or even hours or minutes before she would appear again. So there were intervening acts. It wasn't a single continuous filming that was uninterrupted. There were periods of time that weren't recorded because there was no motion in the bathroom. No one was in there activating the camera. So this quarteting in Cobalt was that a single filming could sustain a single conviction, but here, in this case, the videos were based on multiple recordings and not the single filming that was in Cobalt, and that's how that case is distinguishable from this. I hope that answers your question. So, again, back to the technology. The defendant chose that technology, and it enabled him to conceal the way that he performed his act and not get caught like he had previously been caught. And the trial court, in the State's opinion, erred in finding a single course of conduct here. If this court should disagree with that and find, like the trial court did, that there was a single course of conduct, I would submit to you this hypothetical, which demonstrates that even a single course of conduct can be made up of separate acts. My hypothetical is this. The defendant goes to Walmart and steals a soda at noon today. Then he goes back to Walmart and steals a $200 piece of jewelry on Saturday morning, goes back again to Walmart and steals a $150 TV Saturday afternoon. Clearly, there are three separate acts there, separated by time, but they were at the same location. They involved retail theft from a merchant, same defendant. Yet, under the retail theft statute, these three separate acts can be prosecuted in a single course of conduct and upgraded to a felony instead of a misdemeanor. So the retail theft statute specifically authorized single prosecutions for acts of retail theft that might constitute separate acts individually. And I submit to this court that even if the trial court found, and this court finds, that there was a single course of conduct in the filming, although we don't believe that is what happened here, that it could still constitute separate acts. So even though the trial court said, this is a single course of conduct, defendants' separate acts of recording the victim by the proxy of the motion-activated camera constituted separate acts, and they can sustain more than one conviction. That's all I have, unless this court has questions, and I thank you for your attention. Obviously, we've got a little time. If you would, just maybe briefly hit on that plain error, harmless error argument, the first two issues. All right. So the CAC interview. The interview... Can I clarify something, please? Absolutely. Just a basic point. I'm not explaining what type of error you think it may be, but are you contesting that there was error? Are you conceding that there was error in the admission of those things? We do not concede that, Your Honor. We don't think there was error. The video interview was cumulative testimony. I believe that three previous times this victim had testified that the defendant had tried to record her in the shower, and that was an accident. She was very clear that that was an accident, and in fact, this interview, I mean, it was the State's strategy. The defendant doesn't get to decide the State's strategy of when that's played, or it was clearly admissible under the Statute 115-10, I believe it is, that the victim's statements come in, but it actually could help the defendant, because the jury got to see this victim tell the forensic interviewer that what the defendant had tried to do previously in recording her in the bathroom was an accident. She was very adamant this was an accident, and they got to see that unfiltered, because she did not know at the point she was giving that interview and making those statements that the defendant had subsequently recorded her numerous times over weeks and doing those lewd acts in the bathroom. So it was actually helpful and not hurtful to the defendant. So there was no error there that occurred. It was admissible. It was, the other evidence had already established the same things that were on that interview, and again, this interview was actually, could be viewed as helpful to the defendant for that reason, that she was so adamant that he wouldn't do anything like that to her. Not to distract you too much from Justice Bowie's question, but briefly address the officer testimony, too. The officer was an expert. Was he qualified as an expert in the trial court? No. But he could have been. He had 1,000 hours of training and experience. He was 19 years an officer. He had primarily experience in sex cases and cases similar to the one in front of this court. And so while he was not qualified in the trial court as an expert, he could have been. And there is no expert, human expert, basically, in lie detection. But based on his years of experience, 19 years is a long time, to interview suspects and figure out how to get the information out of them that you need to get out of them to proceed with your prosecution. And he had developed that expertise as a result of not only his training, but also his experience on the job. And so I think it was harmless that that was admitted because he could have been qualified as an expert and therefore his opinion would have been admissible. And did you cite the Loggins case for that exact proposition? Correct. And then if my notes are correct, and I'm assuming this is what the detective testified to during his examination that he had completed roughly 1,000 hours of continuing education and obviously referenced his years of experience and other training. I'm assuming he was asked about that during his testimony. Yes, that's correct, and it's in the record. Starting at around 5-69 or so, he indicated his training was for sex crime investigation, that he had taken courses in trauma-informed response to sexual assault investigation, and sex crimes were generally the scope of what he dealt with in his job. And he had worked a lot of sex cases and child porn cases. That's in the record at 5-10 and 5-92, that last one. And so he had the specialized knowledge and the experience through his on-the-job training and interviewing of defendants to be able to testify as an expert and give his opinion. And the defense counsel did not object to that testimony? I believe that's accurate, yes. Okay. Does anybody have a question? One more thing. My recollection is the video of the officer's interview with the defendant was also played. Is that correct? I'm sorry, I don't have a recollection of whether it was or not. That's my recollection. We will check the record again. But one of the concerns mentioned in the brief was that the officer, whether he could have been qualified or an expert or not, had essentially testified to the ultimate question for the jury, which is the truthfulness, and made comments and conclusions on the truthfulness of the defendant. How do you address that contention? The evidence here was overwhelmingly against the defendant, so even had the officer's comments about the defendant's truthfulness or willingness to be deceitful to him, even if those had not been admitted, the jury would still have reached the same verdict that it did in finding him guilty. The defendant's interviews, as I understood it from the testimony in the record, he changed his story. He had been interviewed twice, and he changed his story. So that right there gives the jury some indication of the defendant's willingness to testify truthfully or provide true testimony. So even if the officer had not been permitted to testify that he felt like the defendant was lying to him, the jury had other information that they could have used to reach that same conclusion. Does that answer your question, Your Honor? Thank you. Are there any questions? No questions. All right. Thank you, counsel. Thank you. Thank you. I just want to clarify real quick that video was played, and so this was actually for the jury to decide the truthfulness of the defendant, not for the detective to guide them to the answer. So I just want to clarify that for the record. As to counsel's arguments on the unit of prosecution, now someone newly argues that these were a proxy, that the video going on and off is a proxy for an act, and that somehow defendant's choosing of this camera that goes on and off can substitute for acts. I would urge the court to look at the statute. This is not mapped onto ñ is not mappable, really, onto the language of the statute, and I did not hear counsel distinguish this court's finding in Kovalt that the statute is ambiguous. There's nothing in the statute that would allow the court to say, oh, we know if we have these types of ñ if we have this type of technology, we can find separate acts. I also want to briefly address counsel's claim about the single course of conduct finding here. I want to say the State did not object to that single course of conduct finding at the time that the court made it. This is not an appealable finding by the State at this point, and it was also, if you want to go there, not an abuse of discretion, because we had that video material, and this additional part that the State now wants to separate out was very grainy. It did not have a time stamp. It did not ñ it showed very little, and so for the court to say, like, well, I'm going to find that this is all part of this package of material that the State is presenting is really not an abuse of discretion, and again, the State did not complain about that at the time. Hold on. I had ñ oh. The State also says that it did not concede error as to these two trial issues, these two trial errors. It certainly did not make arguments in the briefing. That's why I said it conceded. Maybe I should have said it implicitly conceded. I want to make sure that ñ to emphasize one more time, that was not an admissible ñ the interview was not admissible. The statute allows and would have allowed that video to be played if KL had made statements to the charges, but there were no statement ñ there was nothing discussed in that interview about those charges. That was simply not part of it, and so that section of the exceptions to the hearsay statute just simply does not apply here. And I guess finally, logins is distinguishable here. That's the ñ this is about the statements by the ñ the qualification about the expert qualification, as I've said before. But this is some kind of psychological knowledge that the ñ that the police officer claimed here and not ñ and not typical police work. So unless you have further questions, I would ñ I would submit the case for decision. Thank you. Thank you, Counselor. Obviously, we'll take the matter under advisement. We will issue an order in due course.